1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 9  GEORGE CAMERON AND JANIN CAMERON,<br>10  Country Mutual Insurance Company claimants,<br>   and all others similarly situated throughout<br>11  Washington State and the United States of<br>   America,<br><br>12              Plaintiffs,<br><br>13        v.<br><br>14  COUNTRY MUTUAL INSURANCE<br>   COMPANY, an insurance company, COUNTRY<br>15  FINANCIAL, an insurance conglomerate,<br>   COUNTRY CASUALTY INSURANCE<br>16  COMPANY, an insurance company, COUNTRY<br>   PREFERRED INSURANCE COMPANY, an<br>17  insurance company, COUNTRY INVESTOR<br>   LIFE ASSURANCE COMPANY, an insurance<br>18  company and COUNTRY LIFE INSURANCE<br>   COMPANY, an insurance company,<br>19<br>              Defendants.<br>20 | Case No.<br><br>**COUNTRY MUTUAL INSURANCE<br>COMPANY'S NOTICE OF REMOVAL**<br><br>**JURY DEMAND** |

21    TO: Clerk, United States District Court for the Western District of Washington;

22    AND TO: Plaintiffs, and their Attorneys of Record

23         Defendant Country Mutual Insurance Company ("CMIC") hereby removes this putative class

24    action filed in Superior Court of the State of Washington for King County ("Present Action") to the

25

26

COUNTRY MUTUAL INSURANCE COMPANY'S NOTICE OF
REMOVAL - PAGE 1

**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR  97204
Telephone:  503.243.2300

United States District Court for the Western District of Washington.  CMIC removes the Present

Action pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 on the grounds set forth below.

Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of

CMIC's or any other defendants' right to assert any defense.  CMIC reserves the right to assert all

applicable claims and defenses in response to the complaint.

## **BACKGROUND**

1.      Plaintiffs George Cameron and Janin Cameron ("Plaintiffs") first filed suit in the U.S.

District Court for the Eastern District of Washington against CMIC, "Country Financial," Country

Casualty Insurance Company, Country Preferred Insurance Company, Country Investors Life

Assurance Company, and Country Life Insurance Company (collectively, "Defendants") on May 21,

2024, in case number 1:24-cv-03075-MKD ("First Action").  The First Action alleged that Defendants

failed to follow minimum claim settlement practices set forth in WAC 284-30-300 through WAC 284-

30-400, and therefore Defendants violated the Washington Consumer Protection Act ("CPA").

2.      The First Action was assigned to Judge Mary Dimke.  On October 23, 2024, Judge

Dimke issued an order dismissing the First Action for lack of subject matter jurisdiction.  A copy of

the order dismissing the First Action is attached as **Exhibit 1**.  In that order, Judge Dimke explained

that because Plaintiffs had not alleged subject matter jurisdiction in the complaint, she had previously

ordered Plaintiffs to file a brief containing the legal and factual grounds for federal subject matter

jurisdiction in advance of the hearing on Defendants' motions to dismiss.  (*See* Ex. 1 at 4.)  The court,

however, did not direct Defendants to respond to any issues with respect to subject matter jurisdiction.

3.      At the hearing, Plaintiffs' counsel acknowledged that he failed to file the requested

jurisdictional briefing, and further admitted the complaint in the First Action "did not contain a

jurisdictional statement."  (*Id.*)  Nonetheless, Plaintiffs' counsel argued that jurisdiction existed

pursuant to the Class Action Fairness Act of 2005 ("CAFA").  Judge Dimke ultimately concluded that

Plaintiffs' arguments "failed to demonstrate plausible grounds to conclude that the proposed class

would meet the class-member and amount-in-controversy requirements for CAFA jurisdiction," and

COUNTRY MUTUAL INSURANCE COMPANY'S NOTICE OF
REMOVAL - PAGE 2

**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR  97204
Telephone:  503.243.2300

1   therefore dismissed the First Action without prejudice for lack of subject matter jurisdiction. (*Id.* at

2   15.)

3       4.       Judge Dimke also held that Plaintiffs failed to demonstrate standing in the First Action

4   to bring Washington CPA claims against Country Casualty Insurance Company, Country Preferred

5   Insurance Company, Country Investors Life Assurance Company, and Country Life Insurance

6   Company (collectively, the "Country Affiliates"), and that Plaintiffs "failed to state a legally

7   cognizable basis in the Complaint or the proposed amendment for the out-of-state class members to

8   bring a Washington CPA claim against Defendants." (*Id.* at 15–21.)

9       5.       On November 27, 2024, Plaintiffs served Defendants (through service on the

10  Washington Insurance Commissioner) with the Present Action.  The Present Action again alleges that

11  Defendants failed to follow minimum claim settlement practices set forth in WAC 284-30-300 through

12  WAC 284-30-400, and therefore alleges that Defendants violated the Washington CPA.  (Compl. ¶

13  4.3.)  A copy of the complaint in the Present Action is attached as **Exhibit 2**.

14      6.       Plaintiffs in the Present Action have amended their allegations to address some of the

15  jurisdictional issues raised by Judge Dimke's order, including adding allegations addressing the

16  number of putative class members and the amount of damages sought by the putative class.  A

17  comparison showing the changes between the complaint in the First Action and the complaint in the

18  Present Action is attached as **Exhibit 3**.

19      7.       Plaintiffs seek to prosecute the Present Action on behalf of a putative class consisting

20  of: "all individuals throughout Washington State and throughout the United States who have submitted

21  a claim to Defendants which was partially or totally denied in which there was a violation of the

22  insurance regulations." (Compl. ¶ 3.2.)  Plaintiffs' putative class is also limited to persons who "made

23  a claim with Defendants since a date 4 years prior to the filing of this complaint which was denied in

24  part or in whole[.]" (*Id.* ¶¶ 1.3, 1.4.)

25      8.       Plaintiffs purport to state a single cause of action for "Violation of the CPA." (Compl.

26  ¶¶ 4–4.21.)  On this claim, Plaintiffs seek to recover damages for "actual harm," treble damages,

COUNTRY MUTUAL INSURANCE COMPANY'S NOTICE OF
REMOVAL - PAGE 3

**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR  97204
Telephone:  503.243.2300

attorneys' fees and costs, a public injunction, and civil penalties of $7,500 per violation of the CPA. (*Id.* ¶¶ 4.4–4.9.)

9.      The Present Action names five defendants: CMIC and the Country Affiliates.  Each of these companies is a citizen of Illinois.  Country Mutual Insurance Company is an Illinois mutual insurance corporation with its principal place of business in Bloomington, Illinois.  Country Casualty Insurance Company is an Illinois stock insurance corporation with its principal place of business in Bloomington, Illinois.  Country Preferred Insurance Company is an Illinois stock insurance corporation with its principal place of business in Bloomington, Illinois.  Country Investors Life Assurance Company is an Illinois stock insurance corporation with its principal place of business in Bloomington, Illinois.  Country Life Insurance Company is an Illinois stock insurance corporation with its principal place of business in Bloomington, Illinois.

10.     The Present Action also purports to name "Country Financial" as a "joint venture insurance conglomerate" that purportedly "establish[ed] and direct[ed] the claim settlement practices of [CMIC] and other insurance companies listed below . . . ."  (*See* Compl. ¶ 1.6.)  "Country Financial," however, is not a real legal entity and has not been served.

11.     Pursuant to LCR 101(b), CMIC is filing contemporaneously with this notice of removal the operative complaint as a separate "attachment" in the electronic filing system, a certificate of service which lists all counsel who have appeared in the action with their contact information, including email address, and a completed Civil Cover Sheet (AO44).  No other pleadings or records exist in the state court file.

**TIMELINESS OF REMOVAL**

12.     Plaintiffs served a copy of the complaint on CMIC and Country Affiliates on November 27, 2024.  CMIC is filing this notice of removal within 30 days "after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]"  28 U.S.C. § 1446(b)(1).

COUNTRY MUTUAL INSURANCE COMPANY'S NOTICE OF
REMOVAL - PAGE 4

**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR  97204
Telephone:  503.243.2300

**INTRADISTRICT ASSIGNMENT**

13.     The Present Action was filed in the Superior Court in and for the County of King, and is therefore removable to the Seattle Division of this District.  28 U.S.C. § 1441(a); LCR 3(e).

**REMOVAL IS PROPER UNDER CAFA**

14.     CMIC removes this action pursuant to CAFA, 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453 on the basis that the Present Action is a proposed "class action" as defined in 28 U.S.C. § 1332(d)(1)(B); at least one member of the proposed class is a citizen of a state different than Defendants; the number of members of the proposed class is not less than 100; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

15.     **The Present Action is a putative class action.** The Present Action qualifies as a "class action" for purposes of CAFA because it was filed as a class action pursuant to Washington law, namely, Superior Court Civil Rule 23.  28 U.S.C. § 1332(d)(1)(B).

16.     **Minimal diversity exists.**  At least one putative class member is a citizen of a different state than one of the defendants.  Plaintiffs are citizens of Washington.  (Compl. ¶¶ 1.1, 1.2.)  CMIC and Country Affiliates are each citizens of Illinois for diversity purposes because they are Illinois corporations with principal places of business in Bloomington, Illinois.  28 U.S.C. § 1332(d)(2).

17.     **The putative class exceeds 100 members.**  As pleaded, the class exceeds the 100 persons specified in 28 U.S.C. § 1332(d)(5)(B).  Plaintiffs contend that the class will include approximately 25,000 claims submitted to Defendants in Washington during the last four years, and 300,000 claims submitted to Defendants throughout the United States during the last four years.  (Compl. ¶ 3.4.)  Plaintiffs further allege that every claimant is a member of the putative class because "Defendants have failed to properly investigate every claim submitted to them[.]"  (*Id.* ¶ 3.5.)  Accordingly, on the face of the complaint, the Present Action includes over 100 claimants as putative class members.

18.     In addition, CMIC conducted a search to try to identify claims which meet the proposed class criteria and reasonably believes that the putative class is likely to exceed 100 members.  CMIC

searched its claims data based on the class definition asserted by Plaintiffs in Paragraphs 1.3 and 1.4 of the complaint, specifically claims meeting the following parameters: (1) a CMIC insured; (2) who made a claim between November 27, 2020 to the present; (3) the claim was marked as insured not at fault; and (4) the claim was closed without pay. (Decl. of Brandon Whitaker in Supp. of CMIC's Notice of Removal ("Whitaker Decl.") ¶ 3.) That search resulted in 14,080 claims throughout the United States and 913 claims in Washington. (*Id.*) CMIC therefore reasonably assumes that those claims exceed the 100 person threshold under CAFA.

19.    **The amount in controversy exceeds $5 million.**  As explained below, the aggregate amount in controversy exceeds $5,000,000 for the entire putative class, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).  In measuring the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Express, Inc*., 471 F. App'x 646, 648 (9th Cir. 2012). "[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (citation omitted).

20.    Where, as here, a complaint fails to state an amount in controversy, "the defendant's notice of removal may do so," and the defendant need only submit a short and plain statement that "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014).  That statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89.  In determining the amount in controversy, "courts first look to the complaint," and "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Invs., Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015).

21.    As alleged here, Plaintiffs seek actual damages suffered by Plaintiffs, treble damages, attorneys' fees, civil penalties of $7,500 per violation, and a public injunction requiring Defendants to "adopt claims settlement practices which comply with the CPA, IFCA, and WAC 284-30." (*See* Compl. at 15.)  Specifically, Plaintiffs allege that Defendants' conduct has caused the following "damages" to the putative class:

**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR  97204
Telephone:  503.243.2300

- for allegedly "fail[ing] to properly investigate every claim submitted to them," a total of "$15,000,000 of wrongfully denied claims throughout Washington and $250,000,000 of wrongfully denied claims throughout the United States" (*id.* ¶ 3.5);

- for allegedly "fail[ing] to research the policy provisions" and "fail[ing] to inform[] every claimant of all the compensation the claimant might be entitled to under their insurance contract," a total of "$17,000,000 in damages throughout Washington and $250,000,000 in damages throughout the United State[s]" (*id.* ¶ 3.6);

- for allegedly "fail[ing] to give every claimant the necessary information on their claim settlement procedures," a total of "$20,000,000 worth of claims being wrongfully denied throughout Washington State and $300,000 [sic] worth of claims throughout the United States" (*id.* ¶ 3.7);

- for allegedly "deficient claim settlement offers," a total of "$10,000,000 in damages throughout Washington and $125,000,000 throughout the United States caused by time lost and wrongful denial" (*id.* ¶ 3.9);

- for allegedly "fail[ing] to provide a 30-day notice of claim period expiration to every claimant," a total of "$12,000,000 in damages throughout Washington and $150,000,000 throughout the United States" (*id.* ¶ 3.10).

Accordingly, the face of Plaintiffs' complaint asserts damages in excess of the $5,000,000 jurisdictional amount requirement of 28 U.S.C. § 1332(d)(2).

22.    Plaintiffs also seek civil penalties of $7,500 per violation pursuant to RCW 19.86.140. Although Plaintiffs are not entitled to recover those penalties, Plaintiffs' requested penalties also puts the amount in controversy above the jurisdictional limit.  *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (noting the amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability").

23.    As explained above, CMIC's search for claims which meet the proposed class criteria resulted in 14,080 claims throughout the United States and 913 claims in Washington.  (Whitaker

COUNTRY MUTUAL INSURANCE COMPANY'S NOTICE OF REMOVAL - PAGE 7

**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR  97204
Telephone:  503.243.2300

Decl. ¶ 3.)  CMIC's claims data does not provide a basis for CMIC to determine the amount of each of those claims without a claim file-by-claim file review.  However, CMIC reasonably estimates that the aggregated amount of those 14,080 claims would meet the $5 million jurisdictional threshold.  (*Id.* ¶ 4.)

24.    For purposes of removal only, and without conceding that Plaintiffs or the putative class are entitled to any damages, remedies, or penalties whatsoever, the aggregated claims of the putative class, as pleaded in the Present Action, exceed the jurisdictional amount of $5,000,000 exclusive of interest and costs.

25.    **None of the exceptions to CAFA jurisdiction apply.**  Defendants are not citizens of Washington, so the CAFA exceptions do not apply.  *See* 28 U.S.C. § 1332(d)(3)-(4).  In addition, the Present Action does not involve those claims identified in the CAFA exception found at 28 U.S.C. § 1332(d)(9).

26.    Accordingly, because the CAFA requirements are met and the exceptions do not apply, this case is properly removable under CAFA.

### THE COURT ALSO HAS DIVERSITY JURISDICTION

27.    In addition, this Court has jurisdiction over the Present Action pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity and the amount in controversy exceeds $75,000.

28.    **Complete diversity exists.**  Plaintiffs are citizens of Washington.  (Compl. ¶¶ 1.1, 1.2.) CMIC and Country Affiliates are each citizens of Illinois for diversity purposes because they are Illinois corporations with principal places of business in Bloomington, Illinois.  28 U.S.C. § 1332(a)(1).

29.    The citizenship of the unnamed class members need not be considered when analyzing diversity jurisdiction.  *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 940–41 (9th Cir. 2001) (noting that a court should "[e]xamin[e] only the claims of named class plaintiffs for purposes of the amount-in-controversy requirement in diversity class actions" and then extend "supplemental jurisdiction over the

**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR  97204
Telephone:  503.243.2300

claims of unnamed class members when the claim of an individual named plaintiff satisfies the amount-in-controversy requirement").

30.    In addition, Judge Dimke already held in the First Action that Plaintiffs cannot assert claims on behalf of class members outside of Washington.  In the dismissal order, Judge Dimke held that "[t]here are constitutional limitations on how far a state may apply its own substantive law outside the state's borders, including in a class action," and therefore a state "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [that state's] law is not arbitrary or unfair."  (Ex. 1 at 19 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985), and *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981)).)  Judge Dimke then concluded that because "Plaintiffs have not contended that any Defendant is a Washington corporation," and have not "contended that any out-of-state class claim involves Defendants' Washington agent," Plaintiffs' proposed class claims do not "have any connection with Washington."  (*Id.* at 20.)  Plaintiffs therefore "have failed to state a legally cognizable basis in the Complaint or the proposed amendment for the out-of-state class members to bring a Washington CPA claim against Defendants."  (*Id.* at 21.)

31.    **The amount in controversy exceeds $75,000.**  The aggregate amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(b).

32.    Plaintiffs assert that their policy covered insurance on a Challenger MT525B (tractor) "valued at $84,500" and a Kirby Bale Processor (baler) "valued at $45,000."  (Compl. ¶ 2.5.)  Plaintiffs allege that the tractor and baler were both damaged in a fire, and that Plaintiffs requested coverage for the tractor, baler, lost fuel costs, lost tire costs, and the cost of removing the debris from the property.  (*Id.* ¶¶ 2.10–2.15.)  Plaintiffs then assert that CMIC denied the claim in part and Plaintiffs returned the check from CMIC, therefore receiving no payment on their claim for over $129,500 and causing harm to Plaintiffs.  (*Id.* ¶¶ 2.18, 2.20, 2.28–2.30.)  Accordingly, Plaintiffs' individual claim exceeds the $75,000 jurisdictional limit.

**HOLLAND & KNIGHT LLP**
601 SW Second Ave., Ste. 1800
Portland, OR  97204
Telephone:  503.243.2300

1

33.     In addition, as set forth above, the complaint seeks treble damages, attorneys' fees, civil

2

penalties of $7,500 per violation, and a public injunction that further increase the amount in

3

controversy above the jurisdictional requirement of $75,000.  (*See* Compl. ¶¶ 4.4–4.9.)

4

34.     CMIC reserves, and does not waive, all of its objections or defenses related to service,

5

jurisdiction, or venue.

6

35.     Pursuant to 28 U.S.C. § 1446(d), CMIC will promptly serve this Notice of Removal

7

upon all adverse parties and shall promptly serve a copy thereof upon the clerk of the Superior Court

8

of Washington for the County of King.

9

36.     This Notice of Removal is signed pursuant to Local Rule 11.

10

WHEREFORE, the above-captioned action against Country Defendants is hereby removed to

11

this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 and CMIC respectfully requests that

12

all further proceedings in this Action be conducted in this Court as provided by law.

13

14

Dated this 27th day of December, 2024.

15

HOLLAND & KNIGHT LLP

16

17

By: *s/ Kristin Asai*

18

Kristin Asai, WSBA No. 49511
Email: kristin.asai@hklaw.com

19

601 SW Second Avenue, Suite 1800
Portland, OR  97204

20

Telephone:  503.243.2300
Fax:  503.241.8014

21

22

Of Attorneys for Country Mutual Insurance
Company

23

24

25

26

COUNTRY MUTUAL INSURANCE COMPANY'S NOTICE OF
REMOVAL - PAGE 10

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 23, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GEORGE CAMERON AND JANIN CAMERON, Country Mutual Insurance Company claimants, and all others similarly situated throughout Washington State and the United States of America, | No. 1:24-CV-03075-MKD |
| | ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION |
| Plaintiffs, | |
| v. | |
| COUNTRY MUTUAL INSURANCE COMPANY, an insurance company; COUNTRY FINANCIAL, an insurance conglomerate; COUNTRY CASUALTY INSURANCE COMPANY, an insurance company; COUNTRY PREFERRED INSURANCE COMPANY, an insurance company; COUNTRY INVESTOR LIFE ASSURANCE COMPANY, an insurance company; and COUNTRY LIFE INSURANCE COMPANY, an insurance company, | |
| Defendants. | |

ORDER - 1

1    Before the Court are the following three motions: (1) Defendant Country

2    Mutual Insurance's ("CMIC") Motion to Dismiss and to Strike Plaintiffs' Class

3    Allegations, ECF No. 21; (2) the other appearing Defendants' (the "Country

4    Affiliates")[1] Joint Motion to Dismiss, ECF No. 23; and (3) Plaintiffs' Motion to

5    Certify a Class, ECF No. 25.  For the reasons explained below, the Court dismisses

6    the case for lack of subject matter jurisdiction.

7                                    **BACKGROUND**

8    The Complaint asserts claims for unfair or deceptive practices in violation of

9    the Washington Consumer Protection Act (CPA).  ECF No. 1 at 7-10 ¶¶ 4.1-6.4.

10   Plaintiffs named CMIC, the Country Affiliates, and Country Financial as

11   Defendants.  ECF No. 1 at 2-3 ¶¶ 1.5-1.10.

12   All claims stem from Plaintiffs' "Agriplus" farm insurance policy issued by

13   CMIC.  *See* ECF No. 1 at 3 ¶¶ 2.1-2.3; ECF No. 9-1.  Plaintiffs contend that this

14   policy was also issued by Country Financial, *see* ECF No. 1 at 3 ¶ 2.1, 4 ¶ 2.4, 5 ¶¶

15   2.14-2.22.  In brief, Plaintiffs allege that CMIC and Country Financial violated

16   various provisions of the Washington Administrative Code in handling Plaintiffs'

17

18   ───────────────

     [1] The Country Affiliates include (1) Country Casualty Insurance Company,

19   (2) Country Preferred Insurance Company, (3) Country Investor Life Assurance

20   Company, and (4) Country Life Insurance Company.  *See* ECF No. 23 at 5.

ORDER - 2

1   insurance claim for losses sustained in a January 2022 fire.  *See id.* at 3-5 ¶¶ 2.3-

2   2.22.  Plaintiffs indicated that they intend to bring a class action alleging a

3   violation of the Washington CPA on behalf of "*all individuals throughout*

4   *Washington State and throughout the United States* who have submitted a claim to

5   [CMIC] or Country Financial which was partially or totally denied."  *Id.* at 6-7 ¶¶

6   3.1-3.11 (emphasis added).  Plaintiffs also bring claims against the Country

7   Affiliates, ostensibly on the basis that they are "wholly owned and controlled by

8   Country Financial and implement[] the same settlement practices as [CMIC]."  *See*

9   *id.* at 3 ¶¶ 1.7-1.10, 7 ¶ 4.1 ("Defendants have violated RCW 19.86.020 . . . ."), 10

10  ¶ 6.4 ("Defendants should be enjoined to adopt claim settlement practices which

11  comply with the CPA . . . .").

12      Plaintiffs filed a proof of service for CMIC and waivers of service from the

13  Country Affiliates.  ECF Nos. 5, 6.  To date, Plaintiffs have not served Country

14  Financial, and Country Financial has not otherwise appeared in this matter.  *See*

15  ECF No. 42 at 4-5.  The parties dispute whether Country Financial is a legal entity

16  that may be subject to suit; Plaintiffs contend that their failure to serve this entity in

17  the time required by Fed. R. Civ. P. 4(m) should be excused until this dispute is

18  resolved.  *See id.*

19      CMIC moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6)

20  and to strike the class allegations.  ECF No. 21.  The Country Affiliates moved to

ORDER - 3

1  dismiss the Complaint for lack of Article III standing and incorporate the

2  arguments in CMIC's motion.  ECF No. 23.  Shortly thereafter, Plaintiffs moved to

3  certify a class.  ECF No. 25.

4       Although Defendants had not raised the issue, the Court observed that

5  Plaintiffs had not alleged subject matter jurisdiction in the Complaint.  *See* ECF

6  No. 1; ECF No. 38 at 2.  In advance of the motion hearing, the Court directed

7  Plaintiffs to file a brief containing the legal and factual grounds for federal subject

8  matter jurisdiction and ordered Plaintiffs to show cause why Defendant Country

9  Financial had not been served in accordance with Fed. R. Civ. P. 4(m).  ECF

10  No. 38.  Plaintiffs submitted a brief regarding the service issue, *see* ECF No. 39,

11  but did not file any briefing on subject matter jurisdiction before the hearing.

12       At the hearing, Plaintiffs' counsel acknowledged that he had overlooked the

13  Court's order requesting further briefing on subject matter jurisdiction and that the

14  Complaint did not contain a jurisdictional statement.  Plaintiffs' counsel stated that

15  Plaintiffs intended to invoke diversity jurisdiction under the Class Action Fairness

16  Act (CAFA) and conceded that Plaintiffs could not meet the amount-in-

17  controversy requirement for ordinary diversity jurisdiction under 28 U.S.C.

18  § 1332(a).  After the hearing, Plaintiffs' counsel filed a supplemental brief

19  memorializing these arguments and proposing language for an amended complaint

20  to correct the lack of a jurisdictional statement.  ECF No. 42.

ORDER - 4

1    **LEGAL STANDARD**

2         "Federal courts are courts of limited jurisdiction and, as such, cannot

3    exercise jurisdiction without constitutional and statutory authorization." *Kokkonen*

4    *v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is the duty of

5    federal courts to assure themselves that their jurisdiction is not being exceeded."

6    *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1238 (9th Cir. 2022)

7    (quoting *In re Ryther*, 799 F.2d 1412, 1414 (9th Cir. 1986)) (quotation marks

8    omitted). Therefore, "a court may raise the question of subject matter jurisdiction,

9    *sua sponte*, at any time during the pendency of the action . . . ." *Nevada v. Bank of*

10   *Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (quoting *Snell v. Cleveland, Inc.*, 316

11   F.3d 822, 826 (9th Cir. 2002)) (quotation marks omitted).

12   **DISCUSSION**

13        In each complaint, a plaintiff must provide "a short and plain statement of

14   the grounds for the court's jurisdiction, unless the court already has jurisdiction

15   and the claim needs no new jurisdictional support." Fed. R. Civ. P. 8(a)(2). The

16   Complaint clearly lacks any statement of the grounds for federal subject matter

17   jurisdiction and, therefore, cannot proceed in its current form. The remaining

18   question is whether Plaintiffs should be given an opportunity to amend.

19        A court may allow the plaintiff to amend their pleadings to cure

20   jurisdictional deficiencies at any stage of the proceedings. 28 U.S.C. § 1653; *see*

ORDER - 5

*also NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612-13 (9th Cir. 2016). "The intent of the provision is to avoid the needless expenditure of judicial resources where a court can instead 'permit the action to be maintained *if it is at all possible* to determine from the record that jurisdiction does in fact exist.'" *Newgen*, 840 F.3d at 613 (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 639 (2d Cir. 2005)) (emphasis added). However, "[a] district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010) (quoting *Chappel v. Lab. Corp. of America,* 232 F.3d 719, 725-26 (9th Cir. 2000)). Futility may be found when it becomes clear the pleadings cannot "be cured by the allegations of other facts." *Doe v. United* States, 58 F.3d 494, 497 (9th Cir. 1995).

In their post-hearing brief, Plaintiffs confirm that their "sole justification for Federal jurisdiction is 28 USC 1332(d)(2)(A)," i.e., under CAFA. ECF No. 42 at 2. The record provides no plausible indication that CAFA jurisdiction exists, *see Newgen*, 840 F.3d at 613, and this and other legal deficiencies in Plaintiffs' claims demonstrate that amendment would be futile.

**A. Statutory Requirements for CAFA Jurisdiction**

"CAFA provides district courts with jurisdiction over 'class actions' in which the matter in controversy exceeds $5,000,000 and at least one class member

is a citizen of a State different from the defendant."  *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 438 (2019) (citing 28 U.S.C § 1332(d)(2)(A)) (alteration omitted).  In addition, CAFA jurisdiction does not apply if the proposed plaintiff class consists of fewer than 100 members.  28 U.S.C. § 1332(d)(5)(B).  "In CAFA cases, the party asserting federal jurisdiction bears the burden to show the CAFA requirements are satisfied."  *Little v. Naturestar N. Am., LLC*, No. 22-CV-232, 2023 WL 8284007, at *1 & n.1 (E.D. Cal. Nov. 30, 2023) (citing *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010); *Petkevicius v. NBTY, Inc.*, No. 14-CV-2616, 2017 WL 1113295, at *3 (S.D. Cal. Mar. 24, 2017)).

*1.  Class Definition*

Plaintiffs initially defined the proposed class as follows: "all individuals throughout Washington State and throughout the United States who have submitted a claim to Country Mutual or Country Financial which was partially or totally denied."  ECF No. 1 at 6 ¶ 3.1.  In the instant Motion to Certify, Plaintiffs provide a slightly different definition: "all first party insurance claimants whose claim was partially or totally denied by one of Defendants," with a "geographic scope" of "individuals throughout the United States."  ECF No. 25 at 6.  At times, Plaintiffs suggest that this class would be limited to insureds whose claims were denied by Defendants within the last four years, although this temporal limitation does not appear in Plaintiffs' express class definitions.  *See, e.g.*, ECF No. 25 at 6

ORDER - 7

("every claimant within the past four year[s]"); ECF No. 25-1 at 2 ¶ 8 ("The statute of limitations on Washington CPA claims is 4 years as provided in RCW 19.86.120 . . .").

The proposed class definition does not limit any other factors, such as what type of insurance policy was at issue or whether the claim was denied for lawful or unlawful reasons. It is not clear what cause of action could be brought by a class member whose insurance claim was lawfully denied, so the Court imputes Plaintiffs to be limiting the class to those whose insurance claims were unlawfully denied.

   *2. Class Members and Aggregate Amount-in-Controversy*

Plaintiffs contend that the proposed class action meets the 100-member and $5 million amount-in-controversy requirements based on the following calculations.

First, Plaintiffs claim that Defendants "Country Mutual and Country Financial" have "more than 11,500 active insurance *contracts* in Washington" and "over 180,000 *contracts*" nationwide, citing generally to "the Washington State Insurance Commissioner" and "the National Association of Insurance Commissioners" (NAIC). ECF No. 1 at 6 ¶ 3.3 (emphases added). The Court was

ORDER - 8

1   unable to find such statistics at either source's website.[2]  In a declaration

2   supporting the Motion to Certify, Plaintiffs' counsel explains that he estimated

3   there were "about 11,000 Washington and 180,000 [U.S.] *customers*" by "dividing

4   the total premiums collected by Country Mutual in Washington and throughout the

5   United State[s] by George Cameron's insurance premium."  ECF No. 25-1 at 2 ¶ 2

6   (emphasis added).  Counsel attaches reports about CMIC's total premiums in 2023,

7   so it seems he sought to calculate the number of CMIC policies in 2023, though he

8   does not say so.  *See* ECF No. 25-1 at 5-7, 9.  He does not specify the dollar

9   amount of Mr. Cameron's premium that he used in this calculation, nor the

10  applicable year.

11       Counsel is assuming that the premium for Mr. Cameron's farm insurance

12  policy is typical of insurance policies of all types[3] issued by CMIC nationwide,

13

———————————

14  [2] The Court also notes that neither source's database of insurance companies

15  yielded any results for "Country Financial."  *See Company Search*, Office of the

16  Ins. Comm'r, https://fortress.wa.gov/oic/consumertoolkit/Search.aspx (last visited

17  Oct. 23, 2024); *Consumer Insurance Search*, Nat'l Assoc. of Ins. Comm'rs,

18  https://content.naic.org/cis_consumer_information.htm (last visited Oct. 23, 2024).

19  [3] Counsel has also provided a NAIC 2023 "Company Overview" report for CMIC.

20  ECF No. 25-1 at 9.  This report indicates that CMIC's largest line of business, by

ORDER - 9

regardless of variations between policies in property values, types of coverage, policy limits, etc.  Counsel also does not explain how this estimated number of insurance *contracts* is indicative of the number of CMIC insurance *customers*.

Plaintiffs then aver that claims are made on 6 to 7 percent of insurance contracts per year, with an average claim value of $15,000, citing generally to "the Insurance Information Institute" ("II Institute").  *Id.* at 6 ¶ 3.4.  In counsel's declaration, he specifies that "in 2020 about 6.5% of homeowners submitted an insurance claim."  ECF No. 25-1 at 2 ¶ 4.  He attaches a copy of a report on homeowners and renters insurance statistics from the II Institute, though some content was inadvertently cropped out.  ECF No. 25-1 at 11-12.  This report is published on the II Institute's website; the full report indicates that homeowners' insurance claim rates for 2021 and 2022 were lower, at 5.39% and 5.45%, respectively, with an average claim rate of 5.79% for the period between 2018 and

---

far, was in "Homeowners multiple peril" insurance, but its next largest lines of business included "Farmowners multiple peril," "Other private passenger auto liability," "Private passenger auto physical damage," and "Commercial multiple peril (non-liability portion)."  *See id.*, also available at

https://content.naic.org/cis_refined_results.htm?TABLEAU=CIS_FINANCIAL&COCODE=20990&:refresh (last visited Oct. 23, 2024).

ORDER - 10

2022.  *See Facts + Statistics: Homeowners and Renters Insurance*, Ins. Info. Inst.,

https://www.iii.org/fact-statistic/facts-statistics-homeowners-and-renters-insurance

(last visited Oct. 23, 2024).  This sheds little light on the claim rates for other types

of insurance or the claim rates on CMIC insurance policies in particular.  The

report does note that the average "[c]laim severity" ranged from $14,090 to

$18,311 between 2018 and 2022, *id.*, which appears to be the figure from which

Plaintiffs conclude that the average claim value is $15,000.  However, to be clear,

this figure represents the "[a]verage amount *paid* per claim."  *Id.* (emphasis added).

It does not provide any information about the average amount per claim that the

insurer should have paid but did not.

Plaintiffs contend that the above calculations "amount[] to about 3000

claims over the time period for about $45,000,000 in Washington and about 47,000

claims for about $700,000,000 throughout the United States."  ECF No. 1 at 6

¶ 3.5.  Assuming, for the sake of argument that (1) Plaintiffs have correctly

estimated that CMIC had 11,500 insurance contracts in Washington and 180,000

insurance contracts nationwide in 2023, after dividing CMIC's total premiums by

Mr. Cameron's premium; (2) all of these contracts were for homeowners

insurance, despite evidence to the contrary, *see* ECF No. 25-1 at 9; and (3) all of

these contracts had claim rates and claim values consistent with the II Institute's

statistics for homeowners insurance policies in the 2018 to 2022 period, then one

might estimate that CMIC customers made an average of 637 claims in Washington (11,000 policies multiplied by a 5.79% claim rate), and 10,422 claims nationwide (180,000 policies multiplied by a 5.79% claim rate), in a given year. One might then estimate that around CMIC paid out nearly $10 million on the Washington claims (637 claims multiplied by a $15,000 average amount paid per claim) and nearly $157 million on nationwide claims (10,422 claims multiplied by a $15,000 average amount paid per claim).  Finally, assuming that the year-to-year claim rates and values were roughly consistent from 2020 to 2024, one might multiply these yearly figures by four to conclude that CMIC received 2,548 claims and paid out about $40 million in Washington, and received 41,688 claims and paid out about $628 million nationwide, in the proposed class period from 2020 to 2024.  This appears to be the basis for Plaintiffs' contentions that CMIC received 3,000 claims and paid out about $45 million in Washington, and received 47,000 claims and paid out about $700 million nationwide.  *See* ECF No. 1 at 6 ¶ 3.5; ECF No. 42 at 3 ¶ x.8.  But these figures are the product of numerous layers of speculation and dubious assumptions.  More importantly, they say nothing about the number or value of claims CMIC denied, let alone denied unlawfully.

Plaintiffs allege that "[i]f only about 3% of claims were wrongfully denied this amounts to 100 persons throughout Washington and 1,410 throughout the

United States." ECF No. 1 at 6 ¶ 3.6. Plaintiffs do not explain where this 3%

figure comes from.

The proposed amendments do not provide any further information about the

number of likely class members and the aggregate amount-in-controversy. At

most, the proposed amendments note that "[t]he upper range on potential actual

damages is estimated to be $700,000,000." ECF No. 42 at 3 ¶ x.8. This adds little

to the allegations in the original Complaint. *See* ECF No. 1 at 6 ¶ 3.5. On the

contrary, the proposed amendment offers this $700 million figure as an estimate of

*actual damages*, despite that this $700 million figure merely represents a

questionably calculated estimate of the amount CMIC paid out in claims over a

four-year period. There is no information or plausible allegation in the record

about the amount CMIC may have unlawfully refused to pay out.

The Court has reviewed Plaintiffs' data sources and notes one potential

method of estimating the number of potential class members who have had their

claims unlawfully denied by CMIC. The Washington Insurance Commissioner

publishes statistics on complaints received against insurance companies in 2022

and 2023. *See Company Complaint History*, Office of the Ins. Comm'r,

https://fortress.wa.gov/oic/consumertoolkit/Company/CompanyComplaintHistory.

aspx?WAOIC=KYICd5A1t638Px1ajY35WA%253D%253D (last visited Oct. 23,

2024). According to these statistics, CMIC received a total of 11 complaints in

2023.  *Id.*  Five of these complaints had an "[o]utcome (disposition)" of "Company

Position Substantiated"; only one resulted in a disposition of "Company Position

Overturned."[4]  *Id.*  In 2022, CMIC also received 11 complaints total, of which

three received dispositions of "Company Position Substantiated," and one received

a disposition of "Company Position Overturned."  *Id.*  To summarize, only six

complaints against CMIC in 2023 and eight in 2022, or seven per year on average,

were not conclusively resolved in CMIC's favor.[5]  Only one complaint per year

_____

[4] The Insurance Commissioner's website defines these dispositions as follows:

"Company position overturned" indicates that "the Office of the Insurance

Commissioner found the [company] to be in violation [of applicable state

laws/requirements] or otherwise at fault," and "Company position substantiated"

indicates that the company "upheld its original position and appears to be in

compliance with applicable statutes/regulations."  *Company Complaint Outcome

Descriptions*, Office of the Ins. Comm'r, https://www.insurance.wa.gov/company-

complaint-outcome-descriptions (last visited Oct. 23, 2024).

[5] The remainder of these complaints did not receive a conclusive determination

from the Insurance Commissioner—for example, where the parties reached a

compromise or where the dispute involved a question of fact or law outside the

Insurance Commissioner's regulatory authority.  *See Company Complaint*

1   was conclusively resolved in the complainant's favor and against CMIC.  This

2   suggests that the number of CMIC insureds subjected to unlawful insurance

3   practices in Washington between 2020 and 2024 is in the ballpark of four to 28

4   individuals.  That does not suffice for CAFA jurisdiction.

5          In summary, Plaintiffs have failed to demonstrate plausible grounds to

6   conclude that the proposed class would meet the class-member and amount-in-

7   controversy requirements for CAFA jurisdiction, even if Plaintiffs were granted

8   leave to amend.

9          **B. Article III Standing for Claims Against Country Affiliates**

10          Plaintiffs have also failed to address how they have Article III standing to

11   bring CPA claims against the Country Affiliates, which requires dismissal of those

12   claims for lack of subject matter jurisdiction.

13          "In a class action, [Article III] standing is satisfied if at least one named

14   plaintiff meets the requirements."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974,

15   985 (9th Cir. 2007) (en banc) (citation omitted).  Article III standing requires:

16                that (1) the plaintiff suffered an injury in fact, i.e., one that
                 is sufficiently "concrete and particularized" and "actual or
17                imminent, not conjectural or hypothetical," (2) the injury
                 is "fairly traceable" to the challenged conduct, and (3) the
18                injury is "likely" to be "redressed by a favorable decision."

19   _____

20   *Outcome Descriptions*, *supra* note 4.

ORDER - 15

1     *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

2         Plaintiffs contend that they may bring suit against the Country Affiliates in

3   federal court, even though the Country Affiliates were not parties to their insurance

4   contract with CMIC, because the CPA "does not require 'the plaintiff to be in a

5   consumer or contractual relationship with the actor[.]'" ECF No. 32 at 10 (quoting

6   *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 892 (Wash. 2009)). In *Panag*,

7   the Washington Supreme Court explained that the CPA does not require

8   "establish[ing] any consumer relationship, direct or implied, between the parties,"

9   although recognizing that other states' equivalent laws do require such a consumer

10   relationship. 204 P.3d at 890 & n.4 (citations omitted).

11         However, a plaintiff may have a "perfectly viable" cause of action in state

12   court, yet "may nonetheless be foreclosed from litigating the same cause of action

13   in federal court, if he cannot demonstrate the requisite [Article III] injury." *Lee v.*

14   *Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) (citations omitted). The

15   plaintiff in *Lee* had filed suit for violations of California's Unfair Business

16   Practices Act against two life insurance companies—one parent company and one

17   subsidiary. *Id.* at 999. The plaintiff had only purchased life insurance policies

18   from the parent company, not the subsidiary. *Id.* He contended that both engaged

19   in marketing practices that violated the California statute and sought to certify a

20   class action. *Id.* The district court concluded that, because the plaintiff had not

ORDER - 16

1  purchased an insurance policy from the subsidiary, "he could not demonstrate that

2  he had suffered an actual injury" caused by the subsidiary "and therefore could not

3  establish standing to bring suit in federal court."  *Id.*  The Ninth Circuit agreed,

4  reasoning that the plaintiff "did not suffer any injury due to [the subsidiary's]

5  conduct" where the plaintiff had not bought any insurance policy from the

6  subsidiary.  *Id.* at 1002.

7         Plaintiffs dismiss *Lee* as inapplicable, arguing that the issue of standing had

8  been conceded by the parties at the time the case reached the Ninth Circuit.  ECF

9  No. 32 at 10.  Though the parties had so conceded, the Ninth Circuit conducted its

10  own standing inquiry, reasoning that "[i]t would make little sense" to decide how a

11  lack of standing would impact the case without first confirming that there was, in

12  fact, a lack of standing.  *Lee*, 260 F.3d at 1001.  Plaintiffs provide no other basis by

13  which to distinguish *Lee.*

14        The Court finds *Lee* dispositive here—Plaintiffs have not suffered any

15  Article III injury caused by the Country Affiliates' challenged insurance practices

16  where Plaintiffs have not bought any insurance policy from the Country Affiliates.

17  The fact that Plaintiffs might have a viable CPA claim against the Country

18  Affiliates in state court does not change the Article III analysis for proceedings in

19  federal court.  Nor can a class action against the Country Affiliates proceed in

20

ORDER - 17

1    federal court where no named plaintiff has standing to bring a claim against the

2    Country Affiliates.  *See Bates*, 511 F.3d at 985.

3        **C. Applicability of the Washington CPA to Out-of-State Claims**

4            In the above analysis, the Court considered Plaintiffs' assertions about the

5    number of "nationwide" potential class members for the sake of argument.

6    However, it remains unclear whether any out-of-state class members would have a

7    claim against Defendants for violation of the Washington CPA without running

8    afoul of constitutional limits on legislative jurisdiction.

9            Plaintiffs seek to bring a nationwide class action, not a class action limited to

10   Washington class members.  *See* ECF No. 1 at 6 ¶¶ 3.3, 3.5-3.7; ECF No. 25 at 6.

11   According to the NAIC, CMIC is currently licensed to sell at least one type of

12   insurance in a majority of states, so the proposed class would likely span across 46

13   states.  *See Results by Licensing*, Nat'l Assoc. of Ins. Comm'rs,

14   https://content.naic.org/cis_refined_results.htm?TABLEAU=CIS_LICENSING&C

15   OCODE=20990&:refresh (last visited Oct. 23, 2024).  Plaintiffs have only pleaded

16   substantive claims based on the Washington CPA.  *See* ECF No. 1 at 7-10 ¶¶ 4.1-

17   6.4.  In their Motion to Certify, Plaintiffs further confirm that the CPA is the basis

18   for all class claims and argue that this is permissible because Defendants agreed to

19   comply with the Washington CPA by becoming licensed insurers in Washington

20

ORDER - 18

and because nationwide enforcement of the Washington CPA would comport with

the legislative purpose for enacting the Washington CPA:

> In the present case there are three specific reasons why a national class is justified. First, Defendants have affirmatively agreed to abide by the laws of Washington with respect to insurance statutes and regulations by becoming Washington State licensed insurance companies. These laws are explicitly subject to the CPA. . . . And as has been discussed, the CPA protection extends beyond the boundaries of Washington. ***The laws of the State of Washington allow all out-of-state residents to sue companies subject to the laws of the State of Washington for violations of the CPA whether or not they reside in the State of Washington.***
>
> Second, Defendants compete with other insurance companies within Washington. . . . Allowing all US residents to join in the action will ensure that all insurance companies operate on an even playing field. This is vital to fulfill the legislature's instruction that the CPA should be applied "to protect the public and foster fair and honest competition." RCW 19.86.920. [No third reason is discussed.]

ECF No. 25 at 9-10 (emphasis added); *see also* ECF No. 35 at 19-20.

There are constitutional limitations on how far a state may apply its own substantive law outside the state's borders, including in a class action. A state "must have a 'significant contact or significant aggregation of contacts' to the claims asserted *by each member of the plaintiff class*, contacts 'creating state interests,' in order to ensure that the choice of [that state's] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)) (emphasis added).

ORDER - 19

Plaintiffs cite *Thornell v. Seattle Service Bureau, Inc.*, 363 P.3d 587, 591 (Wash. 2015), in support of their argument that the Washington CPA may be applied to all class claims. ECF No. 25 at 9-10; *see also* ECF No. 35 at 19-20. In *Thornell*, the Washington Supreme Court held that "an out-of-state plaintiff may bring a [CPA] claim against a Washington corporate defendant," or "against an out-of-state defendant for the allegedly deceptive acts of its in-state agent." 363 P.3d at 592. This holding is entirely consistent with *Shutts*, as the *Thornell* opinion focuses on CPA claims that have a significant contact with Washington—either by the defendant's incorporation in Washington or through the unlawful acts of the defendant's agent within Washington. *See id.*

Plaintiffs have not contended that any Defendant is a Washington corporation. *See, e.g.,* ECF No. 42 at 3 ¶ x.4 ("All Defendants, other than Country Financial, are incorporated in Illinois."), 3 ¶ x.6 ("Country Financial is an unincorporated joint venture of the other Defendants whose principal place of business is in Bloomington, Illinois."); ECF No. 25 at 6 ("All [CMIC] claims are handled in a single location in Bloomington Illinois."). Nor have Plaintiffs contended that any out-of-state class claim involves Defendants' Washington agent. The proposed class does not require that class claims have any connection with Washington. Therefore, the proposed class would undoubtedly include many CMIC insureds who lack any significant contact or aggregation of contacts with

ORDER - 20

Washington and, therefore, who lack a constitutionally permissible CPA claim
against CMIC. *See Shutts*, 472 U.S. at 821-22.

For this reason, Plaintiffs have failed to state a legally cognizable basis in
the Complaint or the proposed amendment for the out-of-state class members to
bring a Washington CPA claim against Defendants. This also casts doubt on
whether any out-of-state class members and claims can be counted to meet the
100-class member and $5 million amount-in-controversy thresholds for CAFA
jurisdiction over Plaintiffs' claims.

## CONCLUSION

The Complaint lacks any jurisdictional statement sufficient under Fed. R.
Civ. P. 8(a)(2) and must be dismissed. Neither Plaintiffs' proposed amendments
nor the other materials in the record provide any plausible basis for CAFA
jurisdiction, Article III standing to bring claims against the Country Affiliates, or a
legally cognizable basis for out-of-state class claims based on the Washington
CPA. Therefore, amendment would be futile.

The Court dismisses all claims in the Complaint for lack of subject matter
jurisdiction. The federal courts are not the proper forum for adjudication of
Plaintiffs' claims.

Accordingly, **IT IS HEREBY ORDERED:**

ORDER - 21

1.      This action is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

2.      All pending motions are **DENIED** as moot.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order, enter judgment accordingly, provide copies to counsel, and **CLOSE** the file.

DATED October 23, 2024.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 22

**FILED**
2024 DEC 17 04:05 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 24-2-29207-1 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | | |
|---|---|---|
| George Cameron and Janin Cameron, Country Mutual Insurance Company claimants, and all others similarly situated throughout Washington State and the United States of America, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | NO. |
| v. | ) ) ) | **COMPLAINT-CLASS ACTION** FOR VIOLATION OF THE |
| Country Mutual Insurance Company, an insurance company, Country Financial, an insurance conglomerate, Country Casualty Insurance Company, An insurance company, Country Preferred Insurance Company, an Insurance company, Country Investor Life Assurance Company, an insurance Company and Country Life Insurance Company, an insurance company | ) ) ) ) ) ) ) ) ) ) ) ) | CONSUMER PROTECTION ACT AND THE WASHINGTON ADMINISTRATIVE CODE |
| Defendants. | ) ) ) | |

COMES NOW Plaintiffs, by and through their attorney, Seth M. Reynolds, and allege:

## PARTIES

    1.1    Plaintiff-George Cameron (Cameron) is a resident of Washington State who has paid Country Mutual Insurance Company for insurance services and submitted an insurance claim which was in part denied.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1      1.2      Plaintiff-Janin Cameron (Janin) is a resident of Washington State who has paid

2   Country Mutual Insurance Company for insurance services and submitted an insurance claim

3   which was in part denied.

4      1.3      Plaintiffs-All others similarly situated throughout Washington State, namely all

5   individuals who made a claim with Defendants since a date 4 years prior to the filing of this

6   complaint which was denied in part or in whole and as described with more particularity below.

7      1.4      Plaintiffs-All others similarly situated throughout the United States of America,

8   namely all individuals who made a claim with Defendants since a date 4 years prior to the filing

9   of this complaint which was denied in part or in whole and as described with more particularity

10   below.

11      1.5      Defendant-Country Mutual Insurance Company (Country Mutual), a Washington

12   State licensed insurance business selling insurance and conducting business in King County,

13   Washington.

14      1.6      Defendant-Country Financial (Country Financial) is a joint venture insurance

15   conglomerate doing business in King County, Washington and the entity establishing and

16   directing the claim settlement practices of Country Mutual Insurance Company and other

17   insurance companies listed below doing business in Washington State.

18      1.7      Defendant-Country Casualty Insurance Company, a Washington State licensed

19   business selling insurance and conducting business in King County, Washington.

20      1.8      Defendant-Country Preferred Insurance Company, a Washington State licensed

21   insurance business selling insurance and conducting business in King County, Washington.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1       1.9     Defendant-Country Investor Life Assurance Company, a Washington State

2  licensed insurance business selling insurance and conducting business in King County,

3  Washington.

4       1.10    Defendant-Country Life Insurance Company, a Washington State licensed

5  insurance business selling insurance and conducting business in King County, Washington.

6       1.11    As discovery proceeds, the corporate structure revealed may require additional

7  entities to be added to ensure justice.

8

9                              **BACKGROUND**

10      2.1     The Camerons have procured insurance through Country Mutual Insurance

11  Company and Country Financial for many years.

12      2.2     This insurance contract is subject to the Nation Association of Insurance

13  Commissioners Model Regulations which are codified in the Washington Administrative Code

14  WAC 284-30.

15      2.3     On or about August 28, 2021 the Camerons renewed their insurance policy with

16  Defendants.

17      2.4     This policy is cobranded with both Country Financial and Country Mutual

18  Insurance Company branding.

19      2.5     This policy included insurance on a Challenger MT525B valued at $84,500 and a

20  Kirby Bale Processor valued at $45,000 as part of an insurance policy.

21      2.6     This policy included coverage referred to as Farm Personal Property scheduled as

22  a section 7, coverage W, peril 2-21, 26 and 27 as well as a Package of Special Coverages

23  scheduled as section 5, coverage K.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1      2.7      Section 7, coverage W covers farm equipment and peril 2 lists fire as a covered

2  peril.

3      2.8      Section 5, coverage K is a coverage package with includes coverage M which is

4  called "Debris Removal" and is described as covering the removal of debris of covered property

5  after a covered loss.

6      2.9      Section 7, coverage W lists tires whether attached to or intended to be attached to

7  a tractor as covered property with a limit of $5,000 per occurrence.

8      2.10    On or about January 8, 2022 Cameron was working his farm with his insured

9  Challenger MT525B which was towing his Kirby Bale Processor.

10     2.11    While operating the Challenger, there was an unknown malfunction which caused

11  the tractor to catch fire.

12     2.12    This fire rendered the Challenger inoperable and irreparable and caused extensive

13  damage to the Kirby.

14     2.13    Within the next couple of days Cameron reported the occurrence to the company.

15     2.14    No employee of Country Mutual Insurance Company or Country Financial did

16  any independent investigation into which policy provisions would apply to this insurable

17  occurrence.

18     2.15    On June 8, 2022, there are internal company records that Cameron requested that

19  the company cover the damage to his Challenger tractor and Kirby wagon as well as payment for

20  the lost fuel, a lost tire which was practically new and the cost of removing the debris from his

21  property.

Complaint-Class Action

Page 4 of 15

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1         2.16    On August 8, 2022, Country Financial, through a claims adjuster employed by

2 and using Country Financial letterhead and a Country Financial email address, sent Cameron a

3 letter stating that it was still investigating the valuation of the Challenger.

4         2.17    In the meanwhile, Cameron sent various valuations on the Challenger and quotes

5 for the removal of the Challenger debris along with quotes to repair the Kirby.

6         2.18    Country Financial adopted the lowest valuation of the Challenger as the actual

7 value of the Challenger and sent out a check which only covered damages for its valuation of the

8 Challenger and part of the repair costs of the Kirby thus in part denying the Cameron's claim.

9         2.19    Country Financial did not explain or even address the debris removal claim, the

10 lost tire claim or the lost fuel claim.

11         2.20    The Camerons sent the check back stating that it did not cover all their claims and

12 the damage reported.

13         2.21    The Camerons sent in additional documents to support the claims wrongfully

14 denied.

15         2.22    On February 12, 2024, Country Financial sent a letter stating that all other claims

16 would be denied as the one-year time limit on claims had elapsed and that quotes were

17 insufficient evidence of loss.

18         2.23    Neither Country Mutual nor Country Financial advised the Camerons that there

19 was a one-year time limit on their claims or sent a 30-day notification that the time limit for

20 submitting information would expire.

21         2.24    Neither Country Mutual nor Country Financial advised the Camerons concerning

22 what would be considered sufficient evidence of loss.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

Page 5 of 15

2.25     At no time did Country Mutual or Country Financial provide the Camerons with any documents to explain the claim settlement process or their expectations to the Camerons.

2.26     Neither Country Mutual nor Country Financial undertook any actions to evaluate the cost of removing the Challenger, fully repairing the Kirby, covering the tire or any other claim beyond the actual loss value of the Challenger.

2.27     Neither Country Mutual nor Country Financial undertook any research into what coverage would apply to the insurable occurrence suffered by the Camerons.

2.28     Country Mutual and Country Financial caused the Camerons to take time away from their business to address insurance issues which the WACs assign to insurers as the good faith duty of investigation

2.29     Country Mutual and Country Financial caused measurable damage to the Camerons by denying claims to which the Camerons were entitled without cause.

2.30     Country Mutual and Country Financial caused harm to the Camerons by withholding information which would have enabled the Camerons' to better evaluate their claim and understand how to comply with the insurers' undisclosed and unfair claim settlement practices.

### LIABILITY FOR OTHER DEFENDANTS

a)     Joint Venture

2.31     Country Financial is a joint venture of the Country Mutual Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance Company, Country Investor Life Assurance Company and Country Life Insurance Company at minimum.

2.32     These insurers agreed to establish a uniform business operation which owns and/or operates assets and employees for the mutual benefit of its constituent parts.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1       2.33    Each insurer equally consents and participates in this joint venture by enjoying the

2  benefits of these business operations, using joint assets such as a website, buildings and

3  employees, jointly owning the tradename of the joint venture, Country Financial, and

4  maintaining an unified leadership team.

5       2.34    Each insurer individually has statutory duties to follow the insurance regulations.

6       2.35    Each insurer has authorized Country Financial to establish joint claim settlement

7  practices on their half and to conduct those claim settlements.

8       2.36    Each insurer is joint and severally liable for the action taken by their joint venture,

9  Country Financial.

10      2.37    Therefore each insurer is directly jointly and severally liable for the failure of

11  Country Mutual and Country Financial to follow the insurance regulations.

12      <u>b)</u>    <u>Director liability</u>

13      2.38    Individuals who direct actions which violated the CPA are joint and severally

14  liable for the damages and penalties associated with a violation of the CPA.

15      2.39    Even if Country Financial is not a joint venture, the insurers who comprise the

16  Country Financial ownership group acting as directors instituted claim settlement practices

17  which violate the insurance regulations.

18      2.40    Therefore, the insurers are directly liable to the Camerons and other plaintiffs by

19  jointly establishing unfair and deceptive trade practices.

20      <u>c)</u>    <u>Alter Ego Liability</u>

21      2.41    When multiple entities fail to property maintain the boundaries between

22  themselves and start sharing assets rather than maintaining commercially reasonable distinctions,

23  the entities are treated as one entity.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1    2.42    Country Mutual Insurance Company, Country Casualty Insurance Company,

2    Country Preferred Insurance Company, Country Investor Life Assurance Company and Country

3    Life Insurance Company are alter-egos of one another for the same reasons they are part of a

4    joint venture.

5    2.43    They jointly own the tradename Country Financial.

6    2.44    The all have the same employees and directors.

7    2.45    They all use the same offices.

8    2.46    They all use the same policies.

9    2.47    There is no meaningful difference between the entities other than the name.

10    2.48    Therefore if Country Mutual Insurance Company, Country Casualty Insurance

11    Company, Country Preferred Insurance Company, Country Investor Life Assurance Company

12    and Country Life Insurance Company are not part of a joint venture, they are all alter egos of one

13    another.

14    d)    Unnamed Principal Liability

15    2.49    When an individual or company undertakes an action under a tradename it must

16    disclose the principals behind the tradename or the principals are jointly or severally liable for

17    the actions undertaken under a tradename.

18    2.50    Country Mutual Insurance Company, Country Casualty Insurance Company,

19    Country Preferred Insurance Company, Country Investor Life Assurance Company and Country

20    Life Insurance Company all use the tradename of Country Financial in connection with their

21    business activities.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1       2.51    Country Mutual Insurance Company, Country Casualty Insurance Company,

2   Country Preferred Insurance Company, Country Investor Life Assurance Company and Country

3   Life Insurance Company all both own and are all principals of Country Financial.

4       2.52    However, when these companies use of the tradename of Country Financial, they

5   do not accompany that use with a disclosure that the tradename is a pseudonym for Country

6   Mutual Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance

7   Company, Country Investor Life Assurance Company and Country Life Insurance Company.

8       2.53    This failure to disclose the principals behind the tradename with its use subjects

9   all principals to joint and several liability for actions undertaken with Country Financial

10  branding.

11                         **CLASS ACTION ALLEGATIONS**

12      **3.**    **CR 23(a) Prerequisites.**

13      A)    CR 23(a)(1) - Numerosity

14      3.1    Every insurance contract in the US is regulated by the National Association of

15  Insurance Commissioner's Model Regulations.

16      3.2    The ultimate class should include all individuals throughout Washington State and

17  throughout the United States who have submitted a claim to Defendants which was partially or

18  totally denied in which there was a violation of the insurance regulations.

19      3.3    Defendants have placed insurance contracts with over 80,000 consumers in

20  Washington and 1,000,000 consumers throughout the United State.

21      3.4    Over the past four years Defendants have adjusted over 25,000 claims throughout

22  Washington and 300,000 claims throughout the United States.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

Page 9 of 15

1        3.5     Defendants have failed to properly investigate every claim submitted to them

2    resulting in .$15,000,000 of wrongfully denied claims throughout Washington and $250,000,000

3    of wrongfully denied claims throughout the United States.

4        3.6     Defendants have failed to research the policy provisions under which their

5    insureds could claim compensation in every claim submitted to them and Defendants have failed

6    to informed every claimant of all the compensation the claimant might be entitled to under their

7    insurance contract thus many claims which should have been investigated never were which

8    resulted in another $17,000,000 in damages throughout Washington and $250,000,000 in

9    damages throughout the United State.

10       3.7     Defendants have failed to give every claimant the necessary information on their

11   claim settlement procedures which has resulted in $20,000,000 worth of claims being wrongfully

12   denied throughout Washington State and $300,000 worth of claims throughout the United States.

13       3.8     Defendants have failed to properly explain every claim settlement offer made to

14   every claimant leaving them without the information necessary to evaluate why their claim was

15   denied and thus preventing them from being able to provide additional information to ensure

16   their claims were fully compliant with Defendants' claim settlement process.

17       3.9     These deficient claim settlement offers caused $10,000,000 in damages

18   throughout Washington and $125,000,000 throughout the United States caused by time lost and

19   wrongful denial.

20       3.10    Defendants have failed to provide a 30-day notice of claim period expiration to

21   every claimant resulting $12,000,000 in damages throughout Washington and $150,000,000

22   throughout the United States for claim wrongfully deemed tardy.

23       B)     CR 23(a)(2) - Commonality

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1    3.10    The question of law and/or fact common to the class is whether Defendants failed

2    to implement and follow the minimum claim settlement standards established in state laws.

3    3.11    The specific policy provisions alleged to be consistently violated are WAC 284–

4    30-330(4), WAC 284-30-330(13), WAC 284-30-350(1), WAC 284-30-360(4), WAC 284-30-

5    380(5).

6    3.12    Country Financial sets and applies the same claim settlement practices to every

7    claim submitted by every consumer on behalf of each insurance defendant.

8    3.13    The common claim settlement practices will enable this Court to determine

9    whether the claims settlement practices properly incorporate the requirements of the National

10    Association of Insurance Commissions Model Regulations as required by law.

11    3.14    This will enable this Court to resolve the primary issues regarding liability in a

12    single decision.

13    C)    CR 23(a)(3) – Typicality

14    3.15    The class representatives are individuals who submitted a claim to Defendants.

15    3.16    The class representatives had a right for Defendants to obey the insurance

16    regulations.

17    3.17    The class representatives are individuals who were denied part of their claim in

18    violation of applicable laws.

19    3.18    The scope of the typical claim is described below in section 4.

20    D)    CR 23(a)(4) – Adequacy

21    3.19    The class representatives are adequate class representatives because there is no

22    evidence of any conflict of interest.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1        3.20    The class representatives will not be able to benefit from this litigation in a way

2    that could cause harm to any other class members.

3        3.21    Additionally, the class attorney has sufficient motivation to vigorously pursue this

4    action since he has been working in consumer protection for 15 years, has experience with class

5    actions and processing of large amounts of discovery whether physical or electronic.

6

7                    **REPRESENTATIVE CLAIMS**

8        4.      Violation of the CPA

9        4.1    The Washington CPA requires a plaintiff to demonstrate 5 elements, namely 1)

10   unfair or deceptive action, 2) undertaken in furtherance of a commercial or business interest, 3)

11   affecting the public interest, 4) which proximately causes 5) injury.

12       4.2    Washington law provides that a single violation of the WACs satisfies the first

13   three elements of the test.

14       4.3    Defendants have violated RCW 19.86.020 by failing to follow the minimum

15   claim settlement practices set forth in WAC 284-30-300 through WAC 284-30-400 pursuant to

16   RCW 19.86.170, RCW 48.30.010 and WAC 184-30-300.

17       4.4    Pursuant to RCW 19.86.090, Defendants are liable to Plaintiffs for a) actual harm

18   its actions caused, b) treble damages and c) attorney fees and costs.

19       4.5    RCW 19.86.090 additionally provides that an individual may bring, "civil action

20   in superior court to enjoin further violations."

21       4.6    Further, the legislature in RCW 19.86.920 has declared that "the purpose of this

22   act is … to protect the public…."

Complaint-Class Action

Page 12 of 15

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

Ex. 2 to Notice of Removal
Page 12 of 15

1    4.7    The Washington Supreme Court has characterized this injunction as public

2    injunctive relief in *Hockley v. Hargin*, 82 Wn.2d 337 (1973).

3    4.8    Accordingly, Defendants should be enjoined to adopt claim settlement practices

4    which comply with the CPA, IFCA and WAC 284-30.

5    4.9    Pursuant to RCW 19.86.140, Defendants are liable for a civil penalty of $7,500

6    per violation of the CPA.

7    a.    WAC 284-30-330(4)

8    4.10    Defendants have violated WAC 284-30-330(4) by denying a claim without first

9    conducting its own investigation into the cost of debris removal for the destroyed Challenger

10    tractor, the repairs for the Kirby wagon and loss of the tire.

11    4.11    This has resulted in injury to the Camerons because they were not informed of the

12    likely costs, they were denied money to which they were entitled, they took time away from their

13    business and incurred cost to figure out the potential cost of the debris removal and they incurred

14    attorney fees to evaluate if the claim denial was just.

15    b.    WAC 284-30-330(13)

16    4.12    Defendants have violated WAC 284-30-330(13) by denying a claim without

17    providing a reasonable explanation for the basis of that denial and merely reciting policy

18    provisions.

19    4.13    This has resulted in injury to the Camerons because they were denied the

20    information about what claims had been evaluated and why some claims were denied resulting in

21    them not knowing what needed to be fixed to receive all the money to which they were entitled,

22    them wasting time on trying to figure is out and incurring attorney fees to evaluate the situation.

23

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1    c.    WAC 284-30-350(1)

2    4.14    Defendants have violated WAC 284-30-350(1) by failing to investigate the policy

3    provision of their contract with the Camerons

4    4.15    Defendants did not inform the Camerons of all the policy provisions under which

5    they might have valid claims resulting in the Camerons having to send time investigating this

6    themselves and potentially overlooking some claims available.

7    d.    WAC 284-30-360(4)

8    4.16    Defendants have violated WAC 284-30-360(4) by failing to give claimant

9    adequate information to enable the claimant to successfully submit a claim.

10    4.17    Defendants' second letter denying parts of the Camerons claim seems to blame

11    the Camerons for not taking certain necessary actions to be entitled to recover for their covered

12    loss, but these conditions were neither explained beforehand nor were they reasonable.

13    e.    WAC 284-30-380(5)

14    4.18    Defendants have violated WAC 284-30-380(5) by denying a claim as time barred

15    without first warning claimant that the claim would become time barred in 30 days.

16    4.19    Had Defendants provided proper notification, the Camerons would have gotten

17    the additional documental to Defendant within the time frame, preventing the wrongful and

18    frivolous denial explained in the denial letter, and prevent the need for the Camerons to take time

19    away from their business and incur costs in attorney fees in evaluating the legitimacy of

20    Defendants' action.

21    f.    Other WACs or statutory provisions

22    4.20    Defendants may raise an argument which would implicate or demonstrate other

23    violations of the WACs, IFCA or the CPA or discovery may uncover other violative practices.

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1    4.21    Plaintiffs cannot adequately anticipate all arguments which Defendants may make

2  or what may be discovered in Defendants' training manuals, but Plaintiffs assert there may be

3  other violations of the CPA, IFCA or the WACs.

4

5                        **PRAYER FOR RELIEF**

6    WHEREFORE, Plaintiffs pray:

7    1.    For Judgment against Defendants for any damages caused to Plaintiffs.

8    2.    For compensation for attorney fees incurred investigating the legitimacy of

9  Defendant's behavior.

10    3.    For treble damages, pursuant to RCW 19.86.090, calculated off of the actual

11  damages determined by the court.

12    4.    For a reasonable attorney's fee as determined by the court pursuant to RCW

13  19.86.090 and class action compensation models.

14    5.    For a $7,500 civil penalty per violation of the Washington State CPA as provided

15  in RCW 19.86.140.

16    6.    For a public injunction against Defendants requiring them to adopt claims

17  settlement practices which comply with the CPA, IFCA and WAC 284-30.

18

19    Dated this November 21, 2024.

20

21                        Seth M. Reynolds WSBA #44160

22                        Attorney for Plaintiffs

23

24

Complaint-Class Action

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1
2
3
4
5
6
7

~~UNITED STATES DISTRICT~~IN THE SUPERIOR COURT
~~EASTERN DISTRICT~~ OF THE STATE OF WASHINGTON
~~AT YAKIMA~~IN AND FOR KING COUNTY

| | |
|---|---|
| George Cameron and Janin Cameron, Country Mutual Insurance Company claimants, and all others similarly situated throughout Washington State and the United States of America,,   ) ) ) ) ) ) | |
|   Plaintiff,   ) ) | NO. ~~1:24-03075~~ |
|   v.   ) ) | |
| Country Mutual Insurance Company, an insurance company, Country Financial, an insurance conglomerate, Country Casualty Insurance Company, An insurance company, Country Preferred Insurance Company, an Insurance company, Country Investor Life Assurance Company, an insurance Company and Country Life Insurance Company, an insurance company,   ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT-CLASS ACTION** FOR VIOLATION OF THE CONSUMER PROTECTION ACT ~~THE INSURANCE FAIR CONDUCT ACT~~ AND THE WASHINGTON ADMINISTRATIVE CODE |
|   Defendant.   ) ) | |

COMES NOW Plaintiffs, by and through their attorney, Seth M. Reynolds, and allege:

*#*

~~Complaint-Class Action~~
~~1:24-03075~~

~~SETH REYNOLDS, ESQ.~~
~~4780 32nd Ave. S #105~~
~~Seattle, WA 98118~~
~~seth@robertreynoldslaw.com~~
~~Tel: 801-427-9025~~

~~Page 1 of 8~~

Ex. 3 to Notice of Removal
Page 1 of 17

**PARTIES**

1.1     Plaintiff-George Cameron (Cameron) is a resident of ~~Yakima County,~~ Washington State who has paid Country Mutual Insurance Company for insurance services and submitted an insurance claim which was in part denied.

1.2     Plaintiff-Janin Cameron (Janin) is a resident of ~~Yakima County,~~ Washington State who has paid Country Mutual Insurance Company for insurance services and submitted an insurance claim which was in part denied.

1.3     Plaintiffs-All others similarly situated throughout Washington State, namely all individuals who made a claim ~~which was in part denied~~ with Defendants since a date 4 years prior to the filing of this complaint which was denied in part or in whole and as described with more particularity below.

1.4     Plaintiffs-All others similarly situated throughout the United States of America, namely all individuals who made a claim ~~which was in part denied~~ with Defendants since a date 4 years prior to the filing of this complaint which was denied in part or in whole and as described with more particularity below.

1.5     Defendant-Country Mutual Insurance Company (~~Country~~Countly Mutual), ~~an~~a Washington State licensed insurance ~~company doing~~business selling insurance and conducting business in ~~Yakima~~King County, Washington.

1.6     Defendant-Country Financial (~~may be a trade name or BDA rather than official company name, other possible true names include Country Insurance and Financial Services Group or Country Capital Management Company and Illinois Agricultural Association), an~~Country Financial) is a joint venture insurance conglomerate doing business in ~~Yakima~~King County, Washington and the entity establishing and directing the claim settlement practices of Country Mutual Insurance Company and other insurance companies listed below doing business in Washington State.

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1.7     Defendant-Country Casualty Insurance Company, an insurance company wholly owned and controlled by Country Financial and implementing the same settlement practices as Country Mutual Insurance Company doing a Washington State licensed business selling insurance and conducting business in YakimaKing County, Washington.

1.8     Defendant-Country Preferred Insurance Company, an insurance company wholly owned and controlled by Country Financial and implementing the same settlement practices as Country Mutual Insurance Company doing a Washington State licensed insurance business selling insurance and conducting business in Yakima CountyKing C01rnty, Washington.

1.9     Defendant-Country Investor Life Assurance Company, an insurance company wholly owned and controlled by Country Financial and implementing the same settlement practices as Country Mutual Insurance Company doinga Washington State licensed insurance business selling insurance and conducting business in YakimaKing County, Washington.

1.10     Defendant-Country Life Insurance Company, an insurance company wholly owned and controlled by Country Financial and implementing the same settlement practices as Country Mutual Insurance Company doing a Washington State licensed insurance business selling insurance and conducting business in YakimaKing County, Washington.

1.11     TheAs discovery proceeds, the corporate structure revealed may require additional entities to be added to ensure

    justice.

## BACKGROUND

2.1     The Camerons have procured insurance through Country Mutual Insurance Company and Country Financial for many years.

2.2     This insurance contract is subject to the Nation Association of insurance Commissioners Model Regulations which are codified in the Washington Administrative Code WAC 284-30.

Complaint- Class Action
1:24-03075

Page 3 of 813

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

2.22.3  On or about August 28, 2021 the Camerons renewed their insurance policy with Defendants.

2.4    This policy is cobranded with both Country Financial and Country Mutual Insurance Company branding.

2.32.5  This policy included insurance on a Challenger MT525B valued at $84,500 and a Kirby Bale Processor valued at $45,000 as part of an Agriplus Insurance Policyinsurance policy.

2.4    This policy is cobranded with both Country Financial and Country Mutual Insurance Company branding.

2.52.6  This policy included coverage referred to as Farm Personal Property scheduled as a section 7, coverage W, peril 2-21, 26 and 27 as well as a Package of Special Coverages scheduled as section 5, coverage K.

2.62.7  Section 7, coverage W covers farm equipment and peril 2 lists fire as a covered peril.

2.72.8  Section 5, coverage K is a coverage package with includes coverage M which is called "Debris Removal" and is described as covering the removal of debris of covered property after a covered loss.

2.82.9  Section 7, coverage W lists tires whether attached to or intended to be attached to a tractor as covered property with a limit of $5,000 per occurrence.

2.92.10    On or about January 8, 2022 Cameron was working his farm with his insured Challenger MT525B which was towing his Kirby Bale Processor.

2.102.11    While operating the Challenger, there was an unknown malfunction which caused the tractor to catch fire.

2.112.12    This fire rendered the Challenger inoperable and irreparable and caused extensive damage to the Kirby.

2.122.13    Within the next couple of days Cameron reported the occurrence to the company.

Complaint Class Action
1:24-03075

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

Page 4 of 813

2.14    No employee of Country Mutual Insurance Company or Country Financial did any independent investigation into which policy provisions would apply to this insurable occurrence.

2.13 2.15    On June 8, 2022, there is are internal company records that Cameron requested that the company cover the damage to his Challenger tractor and Kirby wagon as well as payment for the *lost* fuel, a lost tire which was practically new and the cost of removing the debris from his property.

2.14 2.16    On August 8, 2022, Country Mutual, Financial, through a claims adjuster employed by and using Country Financial letterhead and a Country Financial email address, sent Cameron a letter stating that the insurer it was still investigating the valuation of the Challenger.

2.15 2.17    In In the meanwhile, Cameron sent various valuations on the Challenger and quotes for the removal of the Challenger debris along with quotes to repair the Kirby.

2.16 2.18    Country Mutual Financial adopted the lowest valuation of the Challenger as the actual value of the Challenger and sent out a check for the damage which only covered damages for its valuation of the Challenger and part of the repair costs of the Kirby thus in part denying the Cameron's claim.

2.19    Country Financial did not explain or even address the debris removal claim, the lost tire claim or the lost fuel claim.

2.17 2.20    The Camerons sent the check back stating that it did not cover all their claims and the damage reported.

2.21    The Camerons sent in additional documents to support the claims wrongfully denied.

2.18 2.22    On February 12, 2024, Country Financial sent a letter stating that all other claims would be denied as the one-year time limit on claims had elapsed and that quotes were insufficient evidence of loss.

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025
Ex. 3 to Notice of Removal
Page 5 of 17

2.19 2.23    Neither Country Mutual nor Country Financial advised the Camerons that there was a one-year time limit on their claims or sent a 30-day notification that the time limit for submitting information would expire within 30 days.

2.20 2.24    Neither Country Mutual nor Country Financial advised the Camerons on concerning what would be considered sufficient evidence of loss.

2.21 2.25    At no time did Country Mutual or Country Financial provide the Camerons with any documents to explain the claim settlement process or their expectations to the Camerons.

2.22 2.26    Neither Country Mutual or nor Country Financial undertook any actions to evaluate the cost of removing the Challenger, fully repairing the Kirby, covering the tire or any other claim beyond the actual loss value of the Challenger.

2.27    Neither Country Mutual nor Country Financial undertook any research into what coverage would apply to the insurable occurrence suffered by the Camerons.

2.28    Country Mutual and Country Financial caused the Camerons to take time away from their business to address insurance issues which the WACs assign to insurers as the good faith duty of investigation

2.29    Country Mutual and Country Financial caused measurable damage to the Camerons by denying claims to which the Camerons were entitled without cause.

2.30    Country Mutual and Country Financial caused harm to the Camerons by withholding information which would have enabled the Camerons' to better evaluate their claim and understand how to comply with the insurers' undisclosed and unfair claim settlement practices.

## LIABILITY FOR OTHER DEFENDANTS

a)    Joint Venture

2.31    Country Financial is a joint venture of the Country Mutual Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance Company, Country Investor Life Assurance Company and Country Life Insurance Company at minimum.

Complaint Class Action
1:24-03075

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

2.32    These insurers agreed to establish a uniform business operation which owns and/or operates assets and employees for the mutual benefit of its constituent parts.

2.33    Each insurer equally consents and participates in this joint venture by enjoying the benefits of these business operations, using joint assets such as a website, buildings and employees, jointly owning the tradename of the joint venture, Country Financial, and maintaining an unified leadership team.

2.34    Each insurer individually has statutory duties to follow the insurance regulations.

2.35    Each insurer has authorized Country Financial to establish joint claim settlement practices on their half and to conduct those claim settlements.

2.36    Each insurer is joint and severally liable for the action taken by their joint venture, Country Financial.

2.37    Therefore each insurer is directly jointly and severally liable for the failure of Country Mutual and Country Financial to follow the insurance regulations.

b)    Director liability

2.38    Individuals who direct actions which violated the CPA are joint and severally liable for the damages and penalties associated with a violation of the CPA.

2.39    Even if Country Financial is not a joint venture, the insurers who comprise the Country Financial ownership group acting as directors instituted claim settlement practices which violate the insurance regulations.

2.40    Therefore, the insurers are directly Liable to the Camerons and other plaintiffs by jointly establishing unfair and deceptive trade practices.

c)    Alter Ego Liability

2.41    When multiple entities fail to property maintain the boundaries between themselves and start sharing assets rather than maintaining commercially reasonable distinctions, the entities are treated as one entity.

Complaint Class Action
1:24-03075

Page 7 of 813

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025
Ex. 3 to Notice of Removal
Page 7 of 17

2.42    Country Mutual Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance Company, Country Investor Life Assurance Company and Country Life Insurance Company are alter-egos of one another for the same reasons they are part of a joint venture.

2.43    They jointly own the tradename Country Financial.

2.44    The all have the same employees and directors.

2.45    They all use the same offices.

2.46    They all use the same policies.

2.47    There is no meaningful difference between the entities other than the name.

2.48    Therefore if Country Mutual Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance Company, Country Investor Life Assurance Company and Country Life Insurance Company are not part of a joint venture, they are all alter egos of one another.

d)____Unnamed Principal Liability

2.49    When an individual or company undertakes an action under a tradename it must disclose the principals behind the tradename or the principals are _jointly or severally liable for the actions undertaken under a tradename.

2.50    Country Mutual Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance Company, Country Investor Life Assurance Company and Country Life Insurance Company all use the tradename of Country Financial] in connection with their business activities.

2.51    Country Mutual Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance Company, Country Investor Life Assurance Company and Country Life Insurance Company all both own and are all principals of Country Financial.

2.52    However, when these companies use of the tradename of Country Financial, they do not accompany that use with a disclosure that the tradename is a pseudonym for Country Mutual

Complaint Class Action
1:24-03075

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

1    Insurance Company, Country Casualty Insurance Company, Country Preferred Insurance Company,

2    Country Investor Life Assurance Company and Country Life Insurance Company.

3        2.53    This failure to disclose the principals behind the tradename with its use subjects all

4    principals to joint and several liability for actions undertaken with Country Financial branding.

5                        **CLASS ACTION ALLEGATIONS**

6        3.

7        A)

8        3.1 CR 23(a) Prerequisites.A) CR 23(a)(1I) - Numerosity Every insurance contract in the US

9    is regulated by the National Association of

10       Insurance Commissioner's Model Regulations.

11       3.13.2  The definition of theultimate class isshould include all individuals throughout

12   Washington State and throughout the United States who have submitted a claim to Country Mutual

13   or Country FinancialDefendants which was partially or totally denied in which there was a violation

14   of the insurance regulations.

15       3.2    Country Mutual and Country Financial maintains physical offices in all states in

16   which it conducts business.

17       3.3    Defendants have placed insurance contracts with over 80,000 consumers in

18   Washington and 1,000,000 consumers throughout the United State.

19       3.4    Over the past four years Defendants have adjusted over 25,000 claims throughout

20       3.3    Country Mutual and Country Financial  have more than 11,500 insurance contracts

21   active in Washington according to the Washington State Insurance Commissioner and over 180,000

22   insurance contracts activeWashington and 300,000 claims throughout the United States according

23   to the National Association of Insurance Commissioners.

24       3.4    According to the Insurance Information Institute about 6% 7% of insurance contracts

25   receive a claim for an average of $15,000 each year.

26

27   Complaint Class Action                          SETH REYNOLDS, ESQ.
     1:24-03075                                      4780 32nd Ave. S #105
28                                                   Seattle, WA 98118
                                                     seth@robertreynoldslaw.com
                                                     Tel: 801-427-9025

3.5    This amounts to about 3000 claims over the time period for about $45,000,000 in Washington and about 47,000 claims for about $700,000,000 throughout the United States.

3.6    If only about 3% of claims were 3.5    Defendants have failed to properly investigate every claim submitted to them resulting in $15,000,000 of wrongfully denied this amounts to 100 persons claims throughout Washington and 1,410 $250,000,000 of wrongfully denied claims throughout the United States.

3.6    Defendants have failed to research the policy provisions under which their insureds could claim compensation in every claim submitted to them and Defendants have failed to informed every claimant of all the compensation the claimant might be entitled to under their insurance contract thus many claims which should have been investigated never were which resulted in another $17,000,000 in damages throughout Washington and $250,000,000 in damages throughout the United State.

3.7    Defendants have failed to give every claimant the necessary information on their claim settlement procedures which has resulted in $20,000,000 worth of claims being wrongfully denied throughout Washington State and $300,000 worth of claims throughout the United States.

3.8    Defendants have failed to properly explain every claim settlement offer made to every claimant leaving them without the information necessary to evaluate why their claim was denied and thus preventing them from being able to provide additional information to ensure their claims were fully compliant with Defendants' claim settlement process.

3.9    These deficient claim settlement offers caused $10,000,000 in damages throughout Washington and $125,000,000 throughout the United States caused by time lost and wrongful denial.

3.10    Defendants have failed to provide a 30-day notice of claim period expiration to every claimant resulting $12,000,000 in damages throughout Washington and $150,000,000 throughout the United States for claim wrongfully deemed tardy.

B)    CR 23(a)(2) - Commonality

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

3.7~~3.10~~     The question of ~~law~~Jaw and/or fact common to the class is whether Defendants failed to implement and follow the minimum claim settlement standards established in state laws ~~and listed below for its claim settlements~~.

3.11    The specific policy provisions alleged to be consistently violated are WAC 284-30-330(4), WAC 284-30-330(13), WAC 284-30-350(1), WAC 284-30-360(4), WAC 284-30-380(5).

3.12    Country Financial sets and applies the same claim settlement practices to every claim submitted by every consumer on behalf of each insurance defendant.

3.13    The common claim settlement practices will enable this Court to determine whether the claims settlement practices properly incorporate the requirements of the National Association of Insurance Commissions Model Regulations as required by law.

3.14    This will enable this Court to resolve the primary issues regarding liability in a single decision.

C)    CR 23(a)(3) - Typicality

~~3.8~~3.15     The class representatives are individuals who submitted a claim to ~~Country Mutual and/or Country Financial~~Defendants.

3.16    The class representatives had a right for Defendants to obey the insurance regulations.

~~3.9~~3.17     The class representatives are individuals who were denied part of their claim in violation of applicable laws.

3.18    The scope of the typical claim is described below in section 4.

D)    CR 23(a)(4) -Adequacy

~~3.10~~3.19     The class ~~representative is an~~representatives are adequate class ~~representative~~representatives because ~~under *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)~~ there is no evidence of any conflict of interest.

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025
Ex. 3 to Notice of Removal
Page 11 of 17

3.20    The class representatives will not be able to benefit from this litigation in a way that could cause harm to any other class members.

3.11 3.21    Additionally, the class attorney has sufficient motivation to vigorously pursue this action since he has been working in consumer protection for 15 years, has experience with class actions and processing of large amounts of discovery whether physical or electronic and is familiar with the standard compensation law available in Washington consumer protection cases and federal class actions.

## REPRESENTATIVE CLAIMS

4.    Violation of the CPA

4.1    The Washington CPA requires a plaintiff to demonstrate 5 elements, namely 1) unfair or deceptive action, 2) undertaken in furtherance of a commercial or business interest, 3) affecting the public interest, 4) which proximately causes 5) injury.

4.2    Washington law provides that a single violation of the WACs satisfies the first three elements of the test.

4.1 4.3    Defendants have violated RCW 19.86.020 by failing to follow the minimum claim settlement practices set forth in WAC 284-30-300 through WAC 284-30-400 pursuant to RCW 19.86.170, RCW 48.30.010 and WAC 184-30-300.

4.2 4.4    Pursuant to RCW 19.86.090, Defendants are liable to Plaintiffs for a) actual harm its actions caused, b) treble damages and c) attorney fees and costs.

4.5    RCW 19.86.090 additionally provides that an individual may bring, "civil action in superior court to enjoin further violations."

4.6    Further, the legislature in RCW l9.86.920 has declared that "the purpose of this act is ... to protect the public…."

4.7    The Washington Supreme Court has characterized th.is injunction as public injunctive relief in *Hockley v. Hargitt,* 82 Wn.2d 337 (1973).

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

4.8    Accordingly, Defendants should be enjoined to adopt claim settlement practices which comply with the CPA, IFCA and WAC 284-30.

4.3 4.9  Pursuant to RCW 19.86.140, Defendants are liable for a civil penalty of $7,500 per violation of the CPA.

a.    WAC 284-30-330(4)

4.4 4.10    Defendants have violated WAC 284-30-330(4) by denying a claim without first conducting its own investigation into the cost of debris removal for the destroyed Challenger tractor, the repairs for the Kirby wagon and loss of the tire.

4.11    This has resulted in injury to the Camerons because they were not informed of the likely costs, they were denied money to which they were entitled, they took time away from their business and incurred cost to figure out the potential cost of the debris removal and they incurred attorney fees to evaluate if the claim denial was just.

b.    WAC 284-30-330(13)

4.5 4.12    Defendants have violated WAC 284-30-330( 13) by denying a claim without providing a reasonable explanation for the basis of that denial and merely reciting policy provisions.

4.13    This has resulted in injury to the Camerons because they were denied the information about what claims had been evaluated and why some claims were denied resulting in them not knowing what needed to be fixed to receive all the money to which they were entitled, them wasting time on trying to figure is out and incurring attorney fees to evaluate the situation.

C.    WAC 284-30-350(1)

4.14    Defendants have violated WAC 284-30-350(1) by failing to investigate the policy provision of their contract with the Camerons

4.15    Defendants did not inform the Camerons of all the policy provisions under which they might have valid claims resulting in the Camerons having to send time investigating this themselves and potentially overlooking some claims available.

e d.    WAC 284-30-360(4)

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025
Ex. 3 to Notice of Removal
Page 13 of 17

4.64.16      Defendants have violated WAC 284-30-360(4) by failing to give claimant adequate information to enable the claimant to successfully submit a claim.

4.17      Defendants' second letter denying parts of the Camerons claim seems to blame the Camerons for not taking certain necessary actions to be entitled to recover for their covered loss, but these conditions were neither explained beforehand nor were they reasonable.

de.      WAC 284-30-380(5)

4.74.18      Defendants have violated WAC 284-30-380(5) by denying a claim as time barredbaITed without first warning claimant that the claim would become time barred in 30 days for a first party claimant and 60 days for a third party claimant.

4.19      Had Defendants provided proper notification, the Camerons would have gotten the additional documental to Defendant within the time frame, preventing the wrongful and frivolous denial explained in the denial letter, and prevent the need for the Camerons to take time away from their business and incur costs in attorney fees in evaluating the legitimacy of Defendants' action.

ef.      Other WACs or statutorystatut01y provisions

4.84.20      Defendants may raise an argument which would implicate or demonstrate another violationother violations of the WACs, IFCA or the CPA or discovery may uncover other violative practices.

4.94.21      Plaintiffs cannot adequately anticipate all arguments which Defendants may make or what may be discovered in Defendants' training manuals, but Plaintiffs assert there may be other violations of the CPA, IFCA or the WACs.

5.      Respondeat Superior

5.1      Country Mutual is a wholly owned subsidiary of Country Financial.

5.2      Country Financial causes its trademark to be applied to all Country Mutual insurance documentation including claims settlement communications to give consumers the impression that it is overseeing the operations of its constituent insurance operators.

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025
Ex. 3 to Notice of Removal
Page 14 of 17

5.3    The applicable insurance contract states, "Thank you for putting your trust in COUNTRY Financial®. We are proud to serve you whenever you need us with helpful advice and exceptional service."

5.4    Country Financial sets a uniform standard for claim settlement across all its subsidiary insurance providers and thus is more than a mere owner; it is an active participant in claims settlement.

5.5    As such, Country Financial is liable for all the unfair or deceptive claims practices of its subsidiaries.

5.6    Additionally, since all subsidiaries of Country Financial implement the same claim settlement practices set forth by Country Financial, they are similarly amenable to prosecution and liable as Country Mutual Financial and Country Financial.

6.    Public Injunctive Relief

6.1    RCW 19.86.090 provides that an individual may bring, "civil action in superior court to enjoin further violations."

6.2    Further, the legislature in RCW 19.86.920 has declared that "the purpose of this act is … to protect the public…."

6.3    The Washington Supreme Court has characterized this injunction as public injunctive relief in *Hockley v. Hargitt*, 82 Wn.2d 337 (1973).

6.4    Accordingly, Defendants should be enjoined to adopt claim settlement practices which comply with the CPA, IFCA and WAC 284-30.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray:

1.    For Judgment against Defendants for ~~the~~any damages caused to Plaintiffs.

2.    For compensation for attorney fees incurred investigating the legitimacy of Defendant's behavior.

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025
Ex. 3 to Notice of Removal
Page 15 of 17

3. For treble damages, pursuant to RCW 19.86.090, calculated off of the actual damages determined by the court.

4. For a reasonable attorney's fee as determined by the court pursuant to RCW ~~19.86.090.~~ 19.86.090 and class action compensation models.

5. For a $7,500 civil penalty per violation of the Washington State CPA as provided in RCW 19.86.140.

6. For a public injunction against Defendants requiring them to adopt claims settlement practices which comply with the CPA, IFCA and WAC 284-30.

Dated this ~~May 17~~November 21, 2024~~.~~.

s/ Seth Reynolds
_____
Seth M. Reynolds WSBA #44160
Attorney for ~~plaintiffs~~Plaintiffs

~~Complaint-Class Action~~
~~1:24-03075~~

SETH REYNOLDS, ESQ.
4780 32nd Ave. S #105
Seattle, WA 98118
seth@robertreynoldslaw.com
Tel: 801-427-9025

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 12/20/2024 9:45:40 PM | |
|---|---|
| **Style name:** HK Standard Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2024-05-21 [1] Complaint.docx | |
| **Modified filename:** 2024-11-21 Cameron v. CMIC et al_King County (WA) Superior Court_Class Action Complaint.docx | |
| **Changes:** | |
| Add | 181 |
| Delete | 136 |
| Move From | 18 |
| Move To | 18 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 353 |

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing COUNTRY MUTUAL INSURANCE COMPANY'S NOTICE OF REMOVAL to be served on the following person[s]:

Seth M Reynolds
4780 32nd Avenue S, Suite 105
Seattle, WA 98118
801-427-9025
seth@robertreynoldslaw.com

Attorneys for Plaintiff

by causing the document to be delivered by the following indicated method or methods:

☑    by CM/ECF electronically mailed notice from the Court on the date set forth below.

☑    by electronically mailed notice on the date set forth below.

☑    by mailing full, true and correct copies thereof in sealed, first class postage prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or attorneys, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

☐    by causing full, true, and correct copies thereof to be hand-delivered to the parties and/or their attorneys at their last-known office addresses listed above on the date set forth below.

☐    by sending full, true, and correct copies thereof, via overnight courier in sealed, prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or their attorneys, on the date set forth below.

☐    by faxing full, true, and correct copies thereof to the fax machines which are the last-known fax numbers for the parties' and/or attorneys' offices, on the date set forth below.

DATED December 27, 2024.


*s/ Kristin Asai*
Kristin Asai

CERTIFICATE OF SERVICE - PAGE 1